NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4846-15T3

JOHN O'NEIL,

 Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE AND
FIREMEN'S RETIREMENT SYSTEM,

 Respondent-Respondent.
______________________________

 Argued September 12, 2017 — Decided October 10, 2017

 Before Judges Reisner and Mayer.

 On appeal from the Board of Trustees, Police
 and Firemen's Retirement System, PFRS No. 3-
 99545.

 John D. Feeley argued the cause for appellant
 (Feeley & LaRocca, LLC, and The Blanco Law
 Firm, LLC, attorneys; Mr. Feeley on the brief;
 Pablo N. Blanco, of counsel and on the brief).

 Cameryn J. Hinton, Deputy Attorney General,
 argued the cause for respondent (Christopher
 S. Porrino, Attorney General, attorney;
 Melissa H. Raksa, Assistant Attorney General,
 of counsel; Ms. Hinton, on the brief).

PER CURIAM
 John O'Neil appeals from a final agency decision of the Board

of Trustees, Police and Firemen's Retirement System (Board)

denying his request for accidental disability retirement benefits.

The Board concluded that O'Neil's disability was not undesigned

and unexpected and that the psychological injury he suffered did

not result from a terrifying or horror-inducing event involving

actual death or injury. Because we disagree, we reverse and remand

to the Board to grant accidental disability retirement benefits

to O'Neil.

 A dispatcher contacted O'Neil, a police officer, to respond

to a call about a man with a gun at a bar. O'Neil responded and

recognized a pickup truck that belonged to his brother, Darin

O'Neil. O'Neil approached the car and saw his brother with a

gaping hole in his chest from a self-inflicted gunshot. O'Neil

took his brother's pulse and discovered he had no pulse. O'Neil

testified that he then "broke down" and had to be removed from the

scene by fellow officers.

 Following the event, O'Neil saw several doctors who diagnosed

him as suffering from post-traumatic stress disorder (PTSD),

anxiety, depression and sleep disorder. He has not returned to

work since the incident.

 O'Neil applied for accidental disability retirement benefits

attributable to the emotional injury suffered when, in performing

 2 A-4846-15T3
his duty as a police officer, he discovered his brother dead by a

self-inflicted gunshot wound. The Board denied the application,

determining that O'Neil was not totally and permanently disabled.

O'Neil requested a hearing, and the Board referred the matter to

the Office of Administrative Law.

 An administrative law judge (ALJ) heard testimony from

O'Neil, Dr. David Pilchman, a psychology expert who evaluated

O'Neil twice, Dr. Jakob Steinberg, O'Neil's treating psychologist

and traumatic stress expert, and Dr. Richard Filippone, the Board's

medical expert.

 O'Neil testified that he never expected to handle a matter

involving his family. O'Neil, who was not a police officer in the

municipality where his brother committed suicide, was asked to

respond because the State Police were unable to handle the matter.

According to O'Neil, he believed it was the department's policy

not to assign officers to situations involving family members, and

had the dispatcher known the matter involved his brother, a

different police officer would have been dispatched. O'Neil

testified that since the incident he cannot return to work and

cannot handle a gun.

 During the hearing, O'Neil presented the testimony of two

medical experts. Dr. Pilchman testified that while police officers

are trained to deal with horrific situations, including suicide,

 3 A-4846-15T3
the trauma is heightened when the matter is personal to the

officer. Dr. Pilchman also testified that witnessing the suicide

of a family member is vastly different from witnessing the suicide

of a stranger. According to Dr. Pilchman, as a result of this

incident, O'Neil is incapable of returning to work as a police

officer. Concurring with Dr. Pilchman, Dr. Steinberg testified

that O'Neil is totally and permanently disabled. Contrary to the

testimony of O'Neil's medical experts, the Board's expert, Dr.

Filippone, testified that O'Neil suffered only a minor impact from

the incident and was not disabled.

 The ALJ found that the testimony of O'Neil and O'Neil's

medical experts was more credible than the testimony of the Board's

medical expert. Based on that credible testimony, the ALJ found

O'Neil was permanently and totally disabled and awarded him

accidental disability retirement benefits.

 The Board rejected the ALJ's recommendation and concluded

that O'Neil was not eligible for accidental disability retirement

benefits. In its decision, the Board adopted the ALJ's fact

findings and agreed that O'Neil was totally and permanently

disabled. However, the Board concluded that the ALJ misapplied

the law and confused the applicable tests requiring that the

incident be (1) "undesigned and unexpected" under Richardson v.

Board of Trustees, Police & Firemen's Retirement System, 192 N.J.

 4 A-4846-15T3
189 (2007), and (2) satisf[y] the standard for a "mental-mental"

claim under Patterson v. Board of Trustees, Police & Firemen's

Retirement System, 194 N.J. 29 (2008).

 "Generally, courts afford substantial deference to an

agency's interpretation of a statute that the agency is charged

with enforcing." Richardson v. Bd. of Trs., Police & Firemen's

Ret. Sys., 192 N.J. 189, 196 (2007). "An appellate court, however,

is 'in no way bound by the agency's interpretation of a statute

or its determination of a strictly legal issue.'" Id. at 196

(quoting In re Taylor, 158 N.J. 644, 658 (1999)). Courts "apply

de novo review to an agency's interpretation of a statute or case

law." Russo v. Bd. of Trs., Police & Fireman's Ret. Sys., 206

N.J. 14, 27 (2011).

 A service member is eligible for accidental disability

retirement benefits if the member is:

 permanently and totally disabled as a direct
 result of a traumatic event occurring during
 and as a result of the performance of his
 regular or assigned duties and that such
 disability was not the result of the member’s
 willful negligence and that such member is
 mentally or physically incapacitated for the
 performance of his usual duty and of any other
 available duty in the department which his
 employer is willing to assign to him.

 [N.J.S.A. 43:16A-7(1).]

 5 A-4846-15T3
 As the Richardson Court explained "a traumatic event is

essentially the same as what we historically understood an accident

to be - an unexpected external happening that directly causes

injury and is not the result of pre-existing disease alone or in

combination with work effort." Richardson, supra, 192 N.J. at 212.

In Richardson, the Court set forth the following factors a claimant

must prove to qualify for accidental disability retirement

benefits:

 1. [the claimant] is permanently and totally
 disabled;

 2. as a direct result of a traumatic event
 that is

 a. identifiable as to time and
 place,
 b. undesigned and unexpected, and
 c. caused by a circumstance external
 to the member (not the result of
 pre-existing disease that is
 aggravated or accelerated by the
 work);

 3. that the traumatic event occurred during
 and as a result of the member's regular or
 assigned duties;

 4. that the disability was not the result of
 the member's willful negligence; and

 5. that the member is mentally or physically
 incapacitated from performing his usual or any
 other duty.

 [Id. at 212-13.]

 6 A-4846-15T3
 The factor at issue is whether the traumatic event experienced

by O'Neil qualified as "undesigned and unexpected." In this case,

during the course of his police duties, O'Neil was unexpectedly

confronted with his brother's suicide. While O'Neil had responded

to other horrific situations in the performance of his duties, he

had never been called to a scene involving a family member, and

ordinarily would not have been given such an assignment.

 Contrary to the Board's position, there is nothing ordinary

or expected about responding to the suicide of a family member.

There is no evidence in the record establishing that personal

tragedies are expected to occur during the performance of police

work or that that officers are prepared for the occurrence of

personal tragedies. Training that might be provided to a police

officer regarding a stranger's suicide would not prepare an officer

encountering the suicide of a family member. See e.g. Thompson

v. Bd. of Trs., Teachers' Pension & Annuity Fund, 449 N.J. Super.

478, 503 (App. Div. 2017), certif. granted, N.J. (2017)

(incident undesigned and unexpected because there was no evidence

that the special education teacher was trained to handle violent

special needs students).

 The Board failed to appreciate the idiosyncratic

circumstances in this case. This was not a routine call for an

officer to respond to a suicide. The situation involved the

 7 A-4846-15T3
suicide of O'Neil's brother. For the Board to equate the two

situations improperly focused on O'Neil's every day duty as a

police officer and ignored the reality that O'Neil was unexpectedly

dispatched to the scene of his brother's suicide. Because the

incident in this case uniquely involved a close family member, the

Board erred in determining that O'Neil's discovery of his brother's

suicide was not "undesigned and unexpected."

 Next, we examine whether O'Neil's injury met the test

established in Patterson. Under Patterson, "the disability must

result from direct personal experience of a terrifying or horror-

inducing event that involves actual or threatened death or serious

injury, or a similarly serious threat to the physical integrity

of the member or another person." Patterson, supra, 194 N.J. at

34. This "assure[s] that the traumatic event . . . is objectively

capable of causing a reasonable person in similar circumstances

to suffer permanent, disabling mental injury." Ibid. These cases

are "so-called mental-mental" cases, "in which a purely mental

stimulus results in emotional or nervous injury." Brunell v.

Wildwood Crest Police Dep't, 176 N.J. 225, 243 (2003). The Board

concluded that O'Neil did not satisfy the Patterson test because

he was not subjected to the threat of death or serious injury and

did not witness his brother discharge the gun.

 8 A-4846-15T3
 We disagree with the Board's determination that O'Neil failed

to satisfy the Patterson test. The facts in this case "must be

viewed with a wider lens than the one the Board applied." Moran

v. Bd. of Trs., Police & Firemen's Ret. Sys., 438 N.J. Super. 346,

354 (App. Div. 2014).

 The facts in this case are distinctive. O'Neil reported to

the bar's parking lot and discovered his brother had killed himself

using a shotgun. O'Neil saw his brother slumped over in the car

with a gaping hole in his chest. As such, O'Neil's discovery of

his brother's body was a "direct personal experience" under

Patterson. In addition, the incident involved the death of

O'Neil's brother, not a stranger. The circumstance qualifies as

a "horror-inducing event" as described in Patterson.

 The Board found that O'Neil did not meet the Patterson test

because he witnessed only the aftermath of his brother's suicide.

O'Neil suffers from a serious injury, PTSD, directly attributable

to the discovery of his brother's death by suicide. The limitation

imposed by the Board, that the violence must be threatened or

undertaken in the claimant's presence, is nowhere expressed in

Patterson. Instead of following Patterson, the Board relied on

unpublished decisions that are not on point here.

 The Court's holdings in Richardson and Patterson compel an

award of accidental disability retirement benefits under the rare

 9 A-4846-15T3
and unique circumstances presented in this case. Accordingly, we

reverse the Board's decision and remand to the Board to grant

accidental disability retirement benefits to O'Neil.

 Reversed and remanded. We do not retain jurisdiction.

 10 A-4846-15T3